# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 06-545-01** |
| | : | |
| **v.** | : | |
| | : | **CIVIL ACTION NO. 09-0765** |
| **QOURTISE SHERMAN** | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                         **November 30, 2009**

Qouirtese Sherman, a federal prisoner, has filed a motion under 28 U.S.C. § 2255, challenging his conviction arising out of an armed robbery during which the victim was shot. He asserts that the "federal court lacks subject matter jurisdiction" and his trial counsel was ineffective for failing to request a mental competency examination and misinforming him regarding his sentencing guidelines which resulted in him not pleading guilty. Because his claims are without merit, his motion will be denied.

## Factual and Procedural History

On the morning of January 8, 2006, Sherman and two accomplices entered the Exxon Mobil convenience store at 3101 North Broad Street, Philadelphia, Pennsylvania. The store clerk, Asim Shazad, recognized Sherman and his cohorts as regular customers. One of the accomplices, Maurice Felder, took a position near the front window of the store after purchasing a cigar. Sherman's other accomplice, Brandon Kellam, distracted Shazad while Sherman forcibly entered the cashier's booth. Brandishing a hand gun, Sherman struck Shazad several times. After unsuccessfully attempting to open the cash register, Sherman then shot Shazad three times. The episode was captured on a surveillance video tape.

Sherman was charged with conspiracy to commit Hobbs Act robbery[1], Hobbs Act robbery[2], and using and carrying a firearm during and in relation to a crime of violence.[3] On March 28, 2007, following a jury trial, Sherman was found guilty of all charges. On July 10, 2007, he was sentenced to a prison term of 88 months on each of the conspiracy and robbery counts to be served concurrently, and a consecutive 120 months on the gun count.

Sherman appealed his conviction and sentence to the Third Circuit Court of Appeals. On September 8, 2008, the Third Circuit affirmed the conviction and sentence. Sherman timely filed this petition under 28 U.S.C. § 2255.

**Discussion**

Sherman's challenge to the court's subject matter jurisdiction is meritless. He was charged in an indictment with violations of federal criminal law over which the district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. Therefore, the District Court had jurisdiction.

Sherman's claim that his counsel was ineffective is two-fold. First, he claims that counsel failed to request a mental health evaluation under 18 U.S.C. §§ 4241 and 4242 which would have revealed that he was "suffering from a mental disease and did not understand the nature and consequences of the proceedings against him nor was he able to assist properly in his own defense." Second, his attorney "mislead" [sic] him regarding his sentencing guideline range which resulted in his foregoing the opportunity to enter an

---

[1] 18 U.S.C. § 1951(a)

[2] 18 U.S.C. § 1951(a) and 2

[3] 18 U.S.C. § 924(c)(1) and 2

2

open plea.

Ineffective assistance of counsel claims are evaluated under the familiar two-part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams v. Taylor*, 529 U.S. 362, 391 (2000). First, the petitioner must demonstrate that his attorney's performance was deficient, that is, "counsel's representation fell below an objective standard of reasonableness," considering all of the surrounding circumstances of the particular case and the facts viewed at the time of counsel's conduct. *Strickland*, 466 U.S. at 687-89. Second, he must show that the deficiency prejudiced his defense. *Id.* at 692. The prejudice prong requires a showing that as a result of the deficient representation, a reasonable probability exists that the result of the proceedings would have been different. *Id.* at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* at 694. In other words, the prejudice component focuses on whether counsel's deficient performance renders the result of the proceedings unreliable or fundamentally unfair. *Williams*, 529 U.S. at 393 n.17.

## Mental Health Evaluation

Although he claims to be suffering from a mental disease, Sherman does not identify what his mental illness is. He claims that he has "mental disabilities and is illiterate." He asserts that the undefined mental disease rendered him incompetent to stand trial and should have been presented in mitigation of sentencing.

Sherman's conduct at the trial and his colloquy with the court demonstrate that he was neither incompetent nor impaired. He displayed an understanding of the proceedings and an ability to communicate with his attorney. In short, there was no reasonable cause

3

to believe that he was unable to assist properly in his defense or understand the consequences or nature of the trial. *See United States v. Leggett*, 162 F.3d 237 (3d Cir. 1998).

As noted on the record, Sherman was observed consulting with his attorney throughout the trial, a fact that Sherman himself acknowledged. As the following colloquy shows, Sherman rationally and intelligently considered and answered questions relating to his interaction with his attorney.

While the jury was deliberating, the following colloquy took place:

> THE COURT: Mr. Sherman, I noticed throughout the trial you were consulting with your attorney. Is that right?
>
> DEFENDANT: Yes.
>
> THE COURT: Are you getting along with him?
>
> DEFENDANT: Pretty nicely.
>
> THE COURT: He is doing what you want him to do, right?
>
> DEFENDANT: Yeah, he did what he could do at the present time due to the fact that, you know, he was secondary attorney for my case.
>
> THE COURT: Is there anything he should have done that he did not do?
>
> DEFENDANT: There is information that could have been retrieved but I don't believe he had time.
>
> THE COURT: What information is that?
>
> DEFENDANT: My past - my past history as far as, you know, the time I was not in the state of Pennsylvania.
>
> THE COURT: He has an agreement. He got that. What else?
>
> DEFENDANT: No, he got partial of it.
>
> THE COURT: What else?

DEFENDANT: That's about it.

Gov't Exhibit "H" at pp. 92-93.

At his sentencing, Sherman again displayed a thorough understanding of the proceedings and his ability to communicate effectively. Before the hearing began, Sherman knew he was present for sentencing for Hobbs Act robbery. He later acknowledged that he had read, albeit with some difficulty, his pre-sentence investigation report several times and had gone over it with his attorney and his cell mate. His comprehension of the report was sufficient enough for him to conclude that the recitation of the facts regarding the robbery was not entirely accurate, and that his medical and school histories were essentially correct. In fact, he pointed out that the report did not include some of his counselors' notes of his sessions with them.

At trial and at sentencing, there was no indication that Sherman was suffering from any mental disability that prevented him from understanding the proceedings or interfered with his ability to interact with his attorney in his defense. On the contrary, he was actively engaged in the process. He communicated with his attorney throughout trial and effectively conversed with the court. In sum, there was no indicia of mental illness or disability that would have led defense counsel to request a mental health evaluation.

As far as his claim that a mental health evaluation could have helped mitigate his sentence, this argument is without merit. Sherman conceded that his mental history was correctly reported by the Probation Office. The pre-sentence investigation report discussed the diagnosis and findings of the psychologist and the psychiatrist who had examined Sherman in earlier unrelated proceedings. His mental health history was taken into

consideration in fashioning a sentence. Although it did not rise to a level meriting a downward departure, it was considered as a mitigating factor that led to a downward variance.

> I also note that he does have a mental health history, albeit not extraordinary enough to merit a downward departure factor. Although I will take that into consideration. He suffers from a multitude of psychiatric disorders. They offer no defense nor an excuse for his behavior but at least they temper my thinking when it comes to sentencing. . . . I note that psychiatrists or case workers have found that - I will use a quote, 'little empathy for others,' end quote. That clearly was demonstrated here in this case. He takes no responsibility for his actions. . .
>
> The sentence I impose is the same sentence I would impose whether the downward departure were granted or not.

Significantly, it was noted that the sentence would have been the same sentence whether a downward departure had been granted. Therefore, defense counsel's not requesting and obtaining a mental health evaluation did not prejudice Sherman.

### Sentencing Guidelines

Sherman's last argument is that his counsel miscalculated the sentencing guidelines during their discussions before trial. He now claims that had he been presented with a proper calculation, he may have entered an open guilty plea. He does not claim that his attorney prevented him from pleading guilty.

Sherman does not suggest how he was prejudiced with respect to his attorney's advice regarding the applicable sentencing guideline range. He does not contend that his sentence would have been any different had he entered a plea.

Importantly, Sherman never raised this issue before filing his § 2255 motion. He did not mention it at his sentencing when asked if he disagreed with any part of the pre-sentence investigation report or when the parties were asked if they agreed to the

6

guidelines calculation.  Even though he made a sentencing argument on appeal to the Third Circuit, he did not mention anything about having been misled by his attorney regarding the guideline range.

The Sixth Amendment right to effective assistance of counsel attaches during the guilty plea stage to assist the defendant in deciding whether to plead guilty. *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 437- 438 (3d Cir. 1982) ("[T]he decision to reject a plea bargain offer and plead not guilty is also a vitally important decision and a critical stage at which the right to effective assistance of counsel attaches.")  "[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer" and "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992).  "[F]amiliarity with the structure and basic content of the Guidelines . . . has become a necessity for counsel who seek to give effective representation." *Id.*  Only when the defendant has an understanding of the alternative courses of action can he make an intelligent and voluntary decision to stand trial or plead guilty.  Thus, the *Strickland* standard applies to "ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

The defendant "need not prove with absolute certainty that he would have pleaded guilty, that the district court would have approved the plea arrangement, and that he therefore would have received a lesser sentence." *Day* 969 F.2d at 45 n.8.  To satisfy the prejudice component, the defendant "must demonstrate that, but for his . . . attorney's alleged ineffectiveness, he would have likely received a lower sentence." *United States*

7

*v. Booth*, 432 F.3d 542, 546 - 47 (3d Cir. 2005). Some courts have imposed a requirement that the defendant present "objective evidence" that he would have pleaded guilty. *Day*, 969 F.2d at 45-6 (collecting cases). However, the Third Circuit has not imposed such a requirement. *See Boyd v. Waymart*, 579 F.3d 330, 356 (3d Cir. 2009).

In Sherman's case, there was no plea deal offered. Instead, he suggests that he "may" have entered into an open plea. Assuming that a plea would have been accepted, Sherman has not established a reasonable probability of a different outcome.

**Certificate of Appealability**

In a § 2255 action, a certificate of appealability may only issue if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He has not done so. Thus, a certificate of appealability will be denied.